UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

JOLEEN JENKINS, Individually and as Parent
and Legal Guardian of Plaintiff, T. J.,

                              *Plaintiffs*,

      -against-

THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE
CENTRE, HOLY TRINITY DIOCESAN HIGH SCHOOL,
SUPERINTENDENT KATHLEEN WALSH, individually
and in her official capacity, PRINCIPAL KATHLEEN
MORAN, individually and in her official capacity,
ASSISTANT PRINCIPAL PATRICIA COOPER,
individually and in her official capacity, and ASSISTANT
PRINCIPAL JAMES MULLER, individually and in his
official capacity,

                              *Defendants*.
------------------------------------------------------------------- X

**Docket No.: CV-20-1404**

**COMPLAINT**
*JURY TRIAL DEMANDED*

    PLAINTIFF, **JOLEEN JENKINS**, as the parent and legal guardian of Minor PLAINTIFF

T. J., by and through their attorneys, The Law Offices of Frederick K. Brewington, state and allege

the following claims against the above-named DEFENDANTS as follows:

## PRELIMINARY STATEMENT

    1.    This is a civil action seeking monetary relief, compensatory and punitive damages,

disbursements, costs and fees for violations of INFANT PLAINTIFF's rights, brought pursuant to

42 U.S.C. §§ 1981, 1988, 42 U.S.C. §2000d, Title VI and New York State Human Rights Law,

Executive Law Art. 15.

    2.    Specifically, the PLAINTIFF alleges that the collective DEFENDANTS engaged in

discrimination based on race and color and negligently, wantonly, recklessly, intentionally and

knowingly sought to and did wrongfully deny INFANT PLAINTIFF the opportunity to remain

enrolled as a student at DEFENDANT HOLY TRINITY DIOCESAN HIGH SCHOOL as a

disciplinary measure although DEFENDANTS favorably exercised their discretion to retain White students that committed the same and/or more serious violations of the student code of conduct.

3.      Said acts were done knowingly, with the consent and condonation of THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, HOLY TRINITY DIOCESAN HIGH SCHOOL (hereinafter "HOLY TRINITY") and the HOLY TRINITY ADMINISTRATION BOARD, SUPERINTENDENT KATHLEEN WALSH, PRINCIPAL KATHLEEN MORAN, ASSISTANT PRINCIPAL PATRICIA COOPER, and ASSISTANT PRINCIPAL JAMES MULLER with the express purpose disciplining INFANT PLAINTIFF in a different manner in which DEFENDANTS treated White students for the same and/or more serious violations of the student code of conduct, and generally violating INFANT PLAINTIFF's rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

5.      This Court is requested to exercise pendant jurisdiction with respect to PLAINTIFF's State law claim pursuant to 28 U.S.C. § 1367.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that PLAINTIFF resides in Nassau County, New York and the incidents alleged herein occurred in Nassau County.

## PARTIES

7.      PLAINTIFF JOLEEN JENKINS, parent and natural guardian of INFANT PLAINTIFF T.J., is an African-American citizen of the United States and resident of the State of New York, County of Nassau.

2

8.     INFANT PLAINTIFF T.J. (hereinafter "INFANT PLAINTIFF") is a resident of the State of New York, County of Nassau. INFANT PLAINTIFF was a minor at the time of the events that are the subject of the within lawsuit and is not currently of majority age. At all times relevant to this Complaint, PLAINTIFF was and is an African-American citizen of the United States and was a student at HOLY TRINITY DIOCESAN HIGH SCHOOL.

9.     DEFENDANT THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, is the Roman Catholic Diocese that oversees, operates and controls the administration, curriculum and governance of DEFENDANT HOLY TRINITY DIOCESAN HIGH SCHOOL. THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE is located at 50 North Park Avenue, Rockville CENTRE, County of Nassau, State of New York.

10.     DEFENDANT SUPERINTENDENT KATHLEEN WALSH (hereinafter "DEFENDANT WALSH") was, at all time relevant to this Complaint was the Superintendent of School for the Diocesan schools operated by THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE. DEFENDANT WALSH is a white woman.

11.     DEFENDANT HOLY TRINITY DIOCESAN HIGH SCHOOL is a private, catholic school which exists and operates by virtue of the laws of New York State and is governed by the laws of the State of New York and the United States. HOLY TRINITY DIOCESAN HIGH SCHOOL is located in Hicksville, County of Nassau, State of New York.

12.     KATHLEEN MORAN (hereinafter "DEFENDANT MORAN") was, at all times relevant to this Complaint, the Principal of HOLY TRINITY DIOCESAN HIGH SCHOOL. DEFENDANT MORAN is a white woman.

3

13.     PATRICIA COOPER (hereinafter "DEFENDANT COOPER") was, at all times relevant to this Complaint, the Assistant Principal of HOLY TRINITY DIOCESAN HIGH SCHOOL. DEFENDANT COOPER is a white woman.

14.     JAMES MULLER (hereinafter "DEFENDANT MULLER") was, at all times relevant to this Complaint, the Assistant Principal of HOLY TRINITY DIOCESAN HIGH SCHOOL.  DEFENDANT MULLER is a white male.

## FACTUAL ALLEGATIONS

15.     In the fall of 2018, INFANT PLAINTIFF T.J. was then a fifteen (15) year old, tenth grade student, at HOLY TRINITY DIOCESAN HIGH SCHOOL.

16.     PLAINTIFF JENKINS and INFANT PLAINTIFF are African American.

17.     Prior to the underlying issue, INFANT PLAINTIFF was a promising student at Holy Trinity, performed well in school and was never involved in any serious disciplinary matters.

18.     On September 14, 2018, however, INFANT PLAINTIFF was found to be in possession of  a marijuana vapor pen ("vapor pen"), which was the first incident of the sort.

19.     INFANT PLAINTIFF T.J. was in gym class and was pulled out of said class by DEFENDANTS JAMES MULLER and PATRICIA COOPER escorted INFANT PLAINTIFF to the gym room locker and instructed INFANT PLAINTIFF to remove his pants from him locker and get changed.  DEFENDANT MULLER stood in the locker room and watched INFANT PLAINTIFF change out of his gym clothing into his school clothing.

20.     INFANT PLAINTIFF was then instructed to reach into his left hand pocket and remove the contents by DEFENDANTS MULLER and COOPER. INFANT PLAINTIFF was found in possession of the subject marijuana pen.  DEFENDANTS MULLER and COOPER escorted

4

INFANT PLAINTIFF to the administrative office and questioned him about the source of the vapor pen.

21.     INFANT PLAINTIFF explained to DEFENDANT Cooper that he was asked to hold onto the vapor pen for safekeeping by an African American/Latino Holy Trinity student, Minor O.A. INFANT PLAINTIFF had no history of use  marijuana or tobacco, and has never owned a vapor pen of any sort.

22.     DEFENDANT COOPER informed INFANT PLAINTIFF that he was lucky that the was not at another school where he would be expelled, rather DEFENDANT MORAN will scream and yell at him on the coming Friday but he would remain a student at HOLY TRINITY HIGH SCHOOL.

23.     Thereafter, DEFENDANT COOPER called PLAINTIFF JOLEEN JENKIN and informed her of the incident and that INFANT PLAINTIFF would be suspended for three (3) days spanning from September 17, 2018 to September 19, 2018. PLAINTIFF was informed that INFANT PLAINTIFF would not be terminated from DEFENDANT HOLY TRINITY and would be able to return to school on Thursday, September 20, 2018 to discuss the incident with DEFENDANT PRINCIPAL KATHLEEN MORAN.

24.      On Monday, September 17, 2018, DEFENDANT COOPER emailed PLAINTIFF JENKINS to inform her that the necessary members of DEFENDANT HOLY TRINITY Administrative Staff were not present at school and therefore could not discuss how to address the incident which lead to INFANT PLAINTIFF'S three day suspension.  DEFENDANT COOPER advised in said email:

> I just wanted to check in with you this week - I hope things are going as well as can be expected. **I was the only administrator in the building today** so we did not have the opportunity to discuss this situation as a group. I will phone you when I have s time for our meeting with Ms. Moran on Thursday.

(*Emphasis* added). DEFENDANT COOPER further advised that she would inform PLAINTIFF JENKINS when DEFENDANT MORAN would be available to meet on Thursday, September, 20, 2018. DEFENDANT COOPER informed PLAINTIFF that DEFENDANT COOPER was the only administrator in the building that day and therefore no one was available to meet with PLAINTIFF to discuss the suspension of INFANT PLAINTIFF. Based on information and belief, DEFENDANT COOPER's representation that she was the only administrator in the building on September 17, 2018 was false, other administrators were in fact in the building at HOLY TRINITY HIGH SCHOOL.

25.     On September 19, 2018, PLAINTIFF JENKINS received another email from DEFENDANT COOPER wherein she told PLAINTIFF that the Administrative Staff needed an additional day to "continue [their] investigation as well as our conversations regarding this situation." DEFENDANT COOPER then informed PLAINTIFF that the meeting would have to be rescheduled for Friday, September 21, 2018.

26.     In reliance upon DEFENDANT COOPER's instruction that INFANT PLAINTIFF would be permitted to return to school on Thursday, September 19, 2018.  PLAINTIFF JENKINS allowed INFANT PLAINTIFF to return to DEFENDANT HOLY TRINITY on said date.

27.     However, later in the day on September 19, 2018, DEFENDANT COOPER removed INFANT PLAINTIFF from his assigned classroom during the second to last class period and informed him that he was required to remain in the library for the duration of the school day. At no point did DEFENDANT COOPER call PLAINTIFF JENKINS to explain the reason why INFANT

PLAINTIFF was removed from his classroom and held in the library.   Infant student O.A. who is African American/Latino was also removed from his classroom on the same day as INFANT PLAINTIFF and made to wait until the end of the day in the library at HOLY TRINITY HIGH SCHOOL rather than continuing to attend classes.

28.      Upon learning of the treatment of her son by DEFENDANT COOPER,  PLAINTIFF JENKINS called DEFENDANT COOPER to inquire into the rationale behind the decision to remove INFANT PLAINTIFF from his classes. DEFENDANT COOPER responded by saying that INFANT PLAINTIFF was required to attend the meeting with PLAINTIFF and DEFENDANT MORAN during the following day. DEFENDANT COOPER had never asked to see INFANT PLAINTIFF prior to the incident when he was removed from his class and placed in the library.  DEFENDANT COOPER had never indicated that speaking with INFANT PLAINTIFF was a condition for INFANT PLAINTIFF to return to class from the three day suspension.

29.      On Friday, September 21, 2018, PLAINTIFF JENKINS arrived at DEFENDANT HOLY TRINITY with the expectation that she would be meeting with DEFENDANT MORAN to discuss the incident regarding  INFANT PLAINTIFF. However, DEFENDANT MORAN, did not attend the meeting. Instead, PLAINTIFF only met with DEFENDANT COOPER in an attempt to resolve the INFANT PLAINTIFF's return to school date.

30.      During said meeting, DEFENDANT COOPER informed PLAINTIFF that DEFENDANT HOLY TRINITY Administrative Board convened and determined that INFANT PLAINTIFF would be dismissed from DEFENDANT HOLY TRINITY . To PLAINTIFF's surprise, instead of being given an opportunity to discuss the situation and/or advocate on INFANT PLAINTIFF's behalf prior to the administrative decision, PLAINTIFF JENKINS was merely

informed that she could appeal the decision to DEFENDANT MORAN by written letter within forty-eight (48) hours.

31.     During the September 21, 2018, in which PLAINTIFF JENKINS met with DEFENDANT COOPER, the only thing DEFENDANT COOPER was willing to state was that INFANT PLAINTIFF was expelled from DEFENDANT HOLY TRINITY by the Administrative Board, effective immediately.   INFANT PLAINTIFF was not present at said meeting and PLAINTIFF JENKINS was denied any opportunity to address DEFENDANT HOLY TRINITY's administrative Board  prior to the vote to expel INFANT PLAINTIFF.

32.     On September 21, 2018, PLAINTIFF JENKINS sent a letter to DEFENDANT MORAN to appeal the Holy Trinity Administrative Board's decision to dismiss INFANT PLAINTIFF. In the letter, PLAINTIFF JENKINS acknowledged INFANT PLAINTIFF's actions, expressed her remorse and, further told DEFENDANT MORAN that she would take affirmative actions to ensure that their would be no repeat incident involving INFANT PLAINTIFF.

33.     On September 23, 2018, DEFENDANT MORAN replied to PLAINTIFF and stated in part:

> I have read your letter and am very sorry for the pain this incident has caused you and your family.  I, however, am charged with the greater responsibility of protecting and creating a safe environment for all the children attending Holy Trinity. **We have very strict consequences for anyone who uses and/or distributed drugs/drug paraphernalia during school or after school.** (*Emphasis Added.*)

> The regulations are clearly outlined in our Parent/Student Handbook. Therefore, I support and will uphold the decision of the Administrative Committee to dismiss[ T].J.

34.     INFANT PLAINTIFF was never alleged to have "used" or "distributed" drug paraphernalia.

8

35.     Notwithstanding the DEFENDANT HOLY TRINITY drug policy, DEFENDANTS have inequitably enforced said policies, by giving white students less severe discipline or no discipline at all, while imposing harsher discipline on Black and Latino students for the same alleged infractions. Consequently, the same favorable discretion that was afforded to white students was not extended to INFANT PLAINTIFF or other Black and Latino students with respect to their behavior.

36.     Upon information and belief, DEFENDANT HOLY TRINITY student, Minor O.A., of African and Latino descent, was also removed from class after his three day suspension and held in the library until the day and expelled for being in possession of a marijuana pen by the DEFENDANTS.

37.     In contrast, upon information and belief, Holy Trinity student, Minor J.M. of Caucasian descent was caught, by a DEFENDANT HOLY TRINITY staff member, in the act of smoking a marijuana pen during a scheduled class. Upon information and belief, DEFENDANT COOPER was aware of this incident as she confronted Minor J.M. in regards to his behavior. Unlike INFANT PLAINTIFF and Minor O.A., Minor J.M. was not disciplined in the same way as INFANT PLAINTIFF and Minor O.A. despite the fact that Minor J.M. was caught by DEFENDANTS and the act of Minor J.M. vaping a marijuana pen in class was filmed by a DEFENDANT HOLY TRINITY  student. Instead, Minor J.M., upon information and belief, is still a student enrolled at DEFENDANT HOLY TRINITY.

38.     Furthermore, DEFENDANTS never requested to view the video of Minor J.M. or asked for a copy of said video and as such, failed to investigate the incident unlike the incident with INFANT PLAINTIFF, were DEFENDANTS acted on information that INFANT PLAINTIFF was in possession of a vapor pen. There were never any allegations that INFANT PLAINTIFF did

9

nothing more than posses the vapor pen.

39.    Upon information and belief, Holy Trinity student, Minor D.R. of Caucasian descent, is a student who has been known by DEFENDANT HOLY TRINITY Administration to sell marijuana pens to students at DEFENDANT HOLY TRINITY, including on school grounds. Upon information and belief, Minor D.R.  has not been disciplined in the same way as INFANT PLAINTIFF.  Instead, Minor D.R., upon information and belief, is still a student enrolled at DEFENDANT HOLY TRINITY.

40.    Upon information and belief, various students on the DEFENDANT HOLY TRINITY's  football team, whose identities are not yet known to the PLAINTIFF but are known to DEFENDANTS, have been caught with marijuana pens in more than three (3) separate instances and yet none were disciplined in the same manner as INFANT PLAINTIFF. Upon information and belief, said students are still enrolled at DEFENDANT HOLY TRINITY and were permitted to remain on the football team.

41.    After learning about the actions of INFANT PLAINTIFF's white schoolmates, and the favorable treatment they received from DEFENDANT HOLY TRINITY administrative staff, PLAINTIFF informed DEFENDANT COOPER of  Minor D.R.'s  sale of marijuana pens on the Holy Trinity campus. Upon information and belief, DEFENDANT COOPER, however, did not take any affirmative actions to address Minor D.R's criminal behavior and did not retract the differential treatment against INFANT PLAINTIFF by reinstating him to school.

42.    Moreover, on or about Monday, September 25, 2018, PLAINTIFF called DEFENDANT MORAN to discuss the differential treatment that INFANT PLAINTIFF received as opposed to his white classmates that were involved in the possession and/or distribution of

10

marijuana pens. DEFENDANT MORAN, however, took no affirmative actions to remedy the differential treatment to which INFANT PLAINTIFF was subjected. Notably, INFANT PLAINTIFF was NEVER alleged by DEFENDANTS to have used or distributed drug paraphernalia, unlike Minors J.M and D.R. INFANT PLAINTIFF was expelled for being in possession of a vapor pen. PLAINTIFF JENKINS' efforts to address this clear level of differential treatment were rebuffed.

43. On or about Wednesday, September 26, 2018, PLAINTIFF called DEFENDANT MORAN's office to speak to her again in regard to INFANT PLAINTIFF's expulsion from DEFENDANT HOLY TRINITY. Upon information and belief, DEFENDANT MORAN made herself unavailable to speak to PLAINTIFF JENKINS. Instead, PLAINTIFF, once again spoke to DEFENDANT COOPER, who offered nothing but platitudes and claimed to have no authority to reverse DEFENDANT MORAN's decision to expel INFANT PLAINTIFF .

44. On or about Thursday, September 27, 2018, INFANT PLAINTIFF was taken to DEFENDANT HOLY TRINITY by PLAINTIFF to meet with DEFENDANTs MORAN and MULLER. During the meeting, INFANT PLAINTIFF acknowledged and apologized for his actions and pleaded to be retained as a student. In the face of the issues raised of differential treatment of INFANT PLAINTIFF and despite his plea, DEFENDANT MORAN, stated in front of PLAINTIFF JENKINS and INFANT PLAINTIFF that she would"go home and pray on it."

45. PLAINTIFF JENKINS called DEFENDANT MORAN on October 1, 2018 and requested a letter stating why INFANT PLAINTIFF was being expelled from DEFENDANT HOLY TRINITY. DEFENDANT MORAN refused to state any reasons in writing and informed PLAINTIFF JENKINS that the official school records would list be falsified and INFANT PLAINTIFF as a transfer student rather than listing the expulsion and the reasons for said expulsion.

46.     PLAINTIFF JENKINS reached out DEFENDANT WALSH and informed DEFENDANT WALSH about the differential treatment of INFANT PLAINTIFF and Student O.A. who are both people of color, compared to white students caught with vapor pens.

47.     DEFENDANT WALSH informed PLAINTIFF JENKINS should would "look into" the incident, however was never available to speak with PLAINTIFF JENKINS again and communicated through her Assistant "Anthony" that she was "unable to help" PLAINTIFF JENKINS.

48.     As a result of INFANT PLAINTIFF's expulsion, he was forced to miss three (3) weeks of school while PLAINTIFF Jenkins searched for another school in which to enroll him in for the duration of the academic school year. INFANT PLAINTIFF was subsequently enrolled in Freeport High School on October 4, 2018.

49.     INFANT PLAINTIFF has suffered serious and ongoing injuries including but not limited to mental anguish, emotional pain and suffering, embarrassment, and humiliation as a result of the ongoing and continuous discrimination by the DEFENDANTS.

### AS AND FOR A FIRST COUNT
### U.S.C. § 1981- Race Discrimination and Unequal Treatment

50.     PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 49 inclusive of this *Complaint*, with the same force and effect as though herein fully set forth.

51.     The above discriminatory treatment of INFANT PLAINTIFF by DEFENDANTs is based on PLAINTIFF'S and INFANT PLAINTIFF'S race and color, as black/ African American.

52.     42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No., 102-406) states "All persons within the jurisdiction of the United States shall have the

same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

53.    DEFENDANTS discriminated against INFANT PLAINTIFF by subjecting INFANT PLAINTIFF to unequal and significantly more severe discipline based on INFANT PLAINTIFF's race as African American, while dispensing little or no discipline to white students who committed greater offenses than INFANT PLAINTIFF. PLAINTIFFS were also discriminated against by DEFENDANTS who subjected PLAINTIFFS to differential terms and conditions regarding INFANT PLAINTIFF maintaining enrollment at DEFENDANT HOLY TRINITY, in contract related said enrollment by requiring differential behavioral standards of INFANT PLAINTIFF based on his color and race as black/African American when compared to similarly situated white students. But for INFANT PLAINTIFF's color and race as black/African American, INFANT PLAINTIFF would not have been singled out for differential discipline and PLAINTIFF JENKINS would have been afforded the same due process as parents of white children.

54.    The above discriminatory pattern and practice based on race and color by DEFENDANTs THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE and HOLY TRINITY, through their agents and employees violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No., 102-406).

55.    Upon information and belief  DEFENDANTS COOPER, MULLER and MORAN determined to suspend both INFANT PLAINTIFF and O.A. for three days and then upon their return to school pulled both students out of their classes for the last two periods of class and held them both

13

in the library until the end of the day, forcing both students to miss classes . Upon information and belief, white students were never removed from class without further infraction upon return to DEFENDANT HOLY TRINITY HIGH SCHOOL after a three day suspension and held in the library until the end of the day.   But for INFANT PLAINTIFF's color and race as black/African American and Minor O.A's races as African American/Latino,  INFANT PLAINTIFF and Minor O.A. would not have been singled out and removed from class without further infraction.

56.     Upon information and belief DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, HOLY TRINITY, the HOLY TRINITY ADMINISTRATION BOARD, PRINCIPAL KATHLEEN MORAN, ASSISTANT PRINCIPAL PATRICIA COOPER, and ASSISTANT PRINCIPAL JAMES MULLER all participated and made the determination to expel INFANT PLAINTIFF for possession of the marijuana pen as well as another African American/Latino student Minor O.A.

57.     INFANT PLAINTIFF was asked by Minor O.A. to hold the vapor pen for him. PLAINTIFF had her son submit to a drug test, and INFANT  PLAINTIFF tested negative for marijuana as well as all other narcotics. This fact was communicated to DEFENDANTS WALSH, MORAN AND COOPER.

58.     PLAINTIFF JENKINS reached out DEFENDANT WALSH and informed DEFENDANT WALSH about the differential treatment of INFANT PLAINTIFF and Student O.A. who are both people of color, compared to white students caught with vapor pens.

59.     DEFENDANT WALSH informed PLAINTIFF JENKINS should would look into the incident, however was never available to speak with PLAINTIFF JENKINS again and communicated through her Assistant "Anthony" that she was "unable to help" PLAINTIFF JENKINS.

14

60.     Upon information and belief, DEFENDANT WALSH never made herself unavailable to speak with parents of white student when serious issues where at stake such as the expulsion of a minor student and differential treatment by the ADMINISTRATION OF DEFENDANT HOLY TRINITY HIGH SCHOOL. But for INFANT PLAINTIFF's and PLAINTIFF JENKINS' color and race as black/African American, DEFENDANT WALSH would have met with PLAINTIFF JENKINS to discuss the expulsion of her son from DEFENDANT HOLY TRINITY HIGH SCHOOL.

61.     DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, HOLY TRINITY, the HOLY TRINITY ADMINISTRATION BOARD, PRINCIPAL KATHLEEN MORAN, ASSISTANT PRINCIPAL PATRICIA COOPER, and ASSISTANT PRINCIPAL JAMES MULLER were on notice that two white students, Minor J.M. and Minor D.R. were involved in selling marijuana pens on school grounds and  actually vaped said pens on school grounds, yet neither of said Minors were suspended or expelled.

62.     Upon information and belief, the only other student expelled from HOLY TRINITY for having a vapor pen on his person was another non white student, Minor O.A. who is  African American/Latino.

63.     PLAINTIFF informed DEFENDANTS about the existence of a video of Minor J.M. vaping a marijuana pen in a class room at DEFENDANT HOLY TRINITY during class.  Upon information and belief Minor J.M., who is white, was not disciplined, nor was he expelled by DEFENDANTS.  Furthermore, DEFENDANTS never requested to view the video of Minor J.M. vaping or asked for a copy of said video and as such, failed to investigate the incident unlike the incident with INFANT PLAINTIFF, were DEFENDANTS acted on information that INFANT

15

PLAINTIFF was in possession of a vapor pen. There were never any allegations that INFANT PLAINTIFF did nothing more than posses the vapor pen. But for INFANT PLAINTIFF's race and color as black and African American, INFANT PLAINTIFF would not have been expelled from DEFENDANT HOLY TRINITY HIGH SCHOOL.

64.     Though DEFENDANTS have an appeals procedure for disciplinary decisions, PLAINTIFF was not provided the opportunity to advocate for INFANT PLAINTIFF  prior to DEFENDANTS making the determination to expel INFANT PLAINTIFF. In fact, PLAINTIFF was informed at a meeting with DEFENDANT COOPER, which PLAINTIFF was lead to believe being held to discuss the incident pending any discipline, that DEFENDANTS had already determined to expel INFANT PLAINTIFF without ANY input from PLAINTIFF or INFANT PLAINTIFF.

65.     To PLAINTIFF's surprise, instead of being given an opportunity to discuss the situation and/or advocate on INFANT PLAINTIFF's behalf prior to the administrative decision, PLAINTIFF JENKINS was merely informed that she could appeal the decision to DEFENDANT MORAN by written letter within forty-eight (48) hours.

66.     Based on information and belief, parents of white students are afforded the opportunity to meet with DEFENDANT MORAN, prior to a determination regarding expulsion or a lengthy suspension of a student at DEFENDANT HOLY TRINITY.

67.     On September 21, 2018, PLAINTIFF JENKINS sent a letter to DEFENDANT MORAN to appeal the Holy Trinity Administrative Board's decision to dismiss INFANT PLAINTIFF. In the letter, PLAINTIFF JENKINS acknowledged INFANT PLAINTIFF's actions, expressed her resmorse and, further told DEFENDANT MORAN that she would take affirmative actions to ensure that their would be no repeat incident involving INFANT PLAINTIFF.

16

68.   On September 23, 2018, DEFENDANT MORAN replied to PLAINTIFF and stated in part:

> I have read your letter and am very sorry for the pain this incident has caused you and your family. I, however, am charged with the greater responsibility of protecting and creating a safe environment for all the children attending Holy Trinity. **We have very strict consequences for anyone who uses and/or distributed drugs/drug paraphernalia during school or after school.** (*Emphasis Added.*)
>
> The regulations are clearly outlined in our Parent/Student Handbook. Therefore, I support and will uphold the decision of the Administrative Committee to dismiss[T].J.

69.   INFANT PLAINTIFF was never alleged to have "used" or "distributed" drug paraphernalia.

70.   Notwithstanding the DEFENDANT HOLY TRINITY drug policy, DEFENDANTS have inequitably enforced said policies, by giving white students less server discipline or no discipline at all, while imposing harsher discipline on Black and Latino students for the same alleged infractions. Consequently, the same favorable discretion that was afforded to white students was not extended to INFANT PLAINTIFF or other Black and Latino students with respect to their behavior.

71.   Furthermore, DEFENDANTS were on notice that members of the HOLY TRINITY football team were selling marijuana pens and vaping on DEFENDANT HOLY TRINITY school property. On information and belief said football team members are white and were not suspended or expelled by DEFENDANTS and were not removed from the football team.

72.   Prior to being expelled, INFANT PLAINTIFF was suspended for three days by DEFENDANT Assistant Principal MULLER and DEFENDANT Assistant Principal COOPER after INFANT PLAINTIFF was found to have a vapor pen on his person. DEFENDANT COOPER informed PLAINTIFF that INFANT PLAINTIFF could resume class after his three day suspension.

17

73.     During the suspension, PLAINTIFF had a scheduled meeting to discuss INFANT PLAINTIFF with DEFENDANT MORAN.  DEFENDANT MORAN cancelled meetings with PLAINTIFF on at least two occasions and absolutely refused to meet with PLAINTIFF prior to making the determination to expel INFANT PLAINTIFF.

74.     Upon information and belief, DEFENDANT MORAN routinely met with parents of white children who were facing serious disciplinary actions prior to making a determination regarding discipline, however, based on PLAINTIFF and INFANT PLAINTIFF's race and color, as black/African American, DEFENDANT MORAN intentionally failed to provide PLAINTIFF the opportunity to meet and discuss the incident with INFANT PLAINTIFF prior to determining to expel INFANT PLAINTIFF. But for INFANT PLAINTIFF's and PLAINTIFF JENKINS' color and race, as black/African American, DEFENDANT MORAN would have met with PLAINTIFF JENKINS prior to making the determination to expel INFANT PLAINTIFF.

75.     Though DEFENDANT COOPER informed PLAINTIFF that INFANT PLAINTIFF could return to school after the three day suspension, when INFANT PLAINTIFF did return, INFANT PLAINTIFF was removed from his last two periods of class and made to stay in the library. INFANT PLAINTIFF was removed from class by DEFENDANT COOPER in front of all of INFANT PLAINTIFF's classmates, causing him great embarrassment and humiliation. PLAINTIFF and INFANT PLAINTIFF are unaware of any instances where a white student was removed from class for no apparent reason and/or removed from class after returning from suspension. DEFENDANTS never responded to PLAINTIFF's inquiries as to why her son, INFANT PLAINTIFF was removed from class in such a manner.   Student O.A. who is African American/Latino was subjected to the exact same treatment by DEFENDANTS when he returned

18

from his three day suspension as well, removed from class and held in the library until the end of the day. But for INFANT PLAINTIFF's color and race, as black/African American, INFANT PLAINTIFF would have been permitted to stay in class after serving his three day suspension and not summarily removed from the classroom without parental notification.

76.    PLAINTIFF was subjected to unequal terms in contract as PLAINTIFF paid tuition to DEFENDANTS for INFANT PLAINTIFF to attend DEFENDANT HOLY TRINITY. However, PLAINTIFF was subjected to differential terms, as INFANT PLAINTIFF was held to a higher standard then the white students, and subjected to unequal discipline, terms and conditions in order to maintain his enrollment at HOLY TRINITY.

77.    DEFENDANTS ignored PLAINTIFF and refused to remedy the differential treatment INFANT PLAINTIFF was subjected to when PLAINTIFF JENKINS complained of the alleged treatment of her son to DEFENDANTS.

78.    As a result of INFANT PLAINTIFF's wrongful expulsion from DEFENDANT HOLY TRINITY, INFANT PLAINTIFF missed three weeks of school, which caused him to fall behind in his school work.

79.    As a direct and proximate result of said acts, INFANT PLAINTIFF has been deprived of his rights and freedoms, mentally harmed, to the extent of which he suffered from his loss of educational opportunity. INFANT PLAINTIFF has been forced to seek and attend a public institution in lieu of his enrollment at Holy Trinity High School. He has been subjected to humiliation, loss of dignity, emotional distress, humiliation and embarrassment. PLAINTIFF has incurred incidental fees/damages, and attorney's fees.

80.     Because of INFANT PLAINTIFF's race and color, he has been subjected to different and disparate mistreatment as detailed above and has been treated differently than white students in that INFANT PLAINTIFF has been treated as stated herein because of his race and color.

81.     As a result of the DEFENDANTS' discriminatory acts, PLAINTIFF is now suffering and will continue to suffer irreparable injury and PLAINTIFF is entitled to damages sustained to date and continuing in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS FOR A SECOND COUNT
## TITLE VI 42 U.S.C. § 2000(d)
## Discrimination on the Basis of Race and Color by An Entity Receiving Federal Financial Assistance

82.     PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 81 inclusive of this *Complaint*, with the same force and effect as though herein fully set forth.

83.     Title VI prohibits educational institutions receiving Federal financial assistance from discriminating on the "ground of race, color, or national origin." 42 U.S.C. § 2000(d).

84.     DEFENDANT HOLY TRINITY HIGH SCHOOL receives Federal financial assistance by and through the U.S. Department of Education and federal funds disseminated through the New York State Department of Education . DEFENDANT HOLY TRINITY HIGH SCHOOL receives said Federal funding specifically for non-religious student programs via the Elementary and Secondary Education Act of 1965 ("ESEA") and as amended via the Every Student Succeed Act of 2015 (ESSA). Upon information and belief, DEFENDANT HOLY TRINITY HIGH SCHOOL also receives funding by students whose families qualify for Federal financial assistance.

85.     DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE

and HOLY TRINITY DIOCESAN HIGH SCHOOL discriminated against INFANT PLAINTIFF on the basis of his race and color, black/African American, in terms of unequal and more severe discipline when said DEFENDANTS expelled INFANT PLAINTIFF from HOLY TRINITY compared to white students who were permitted to continue as students at HOLY TRINITY and were not disciplined for the same or greater infractions of said DEFENDANTS' disciplinary code regarding marijuana vapor pens.

86.    Upon information and belief, the only other student expelled from HOLY TRINITY for having a vapor pen on his person was another non white student, Minor O.A. who is  African American/Latino.

87.    PLAINTIFF JENKINS was denied the opportunity to advocate for her son, INFANT PLAINTIFF, prior to the decision made by DEFENDANTS to expel INFANT PLAINTIFF, unlike the parents of similarly situated white parents, based on the race and color, black/African American, of PLAINTIFF JENKINS and her son.

88.    INFANT PLAINTIFF was subjected to differential treatment by DEFENDANTS when he was removed from his classroom by DEFENDANT COOPER, during  the second to last period of the school day and made to stay in the library based on his race and color, black/African American, even though INFANT PLAINTIFF had completed his three day suspension and was instructed by DEFENDANTS to return to HOLY TRINITY that day. INFANT PLAINTIFF returned without incident until DEFENDANT COOPER removed PLAINTIFF from the classroom.  Upon information and belief, when white students completed a three day suspension and  were informed to return to HOLY TRINITY they were permitted to complete the school day without removal by DEFENDANTS and being held in the library.

21

89.     DEFENDANTS ignored PLAINTIFF and refused to remedy the differential treatment INFANT PLAINTIFF was subjected to when PLAINTIFF JENKINS complained of the alleged treatment of her son to DEFENDANTS.

## AS AND FOR A THIRD COUNT
## NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW ART. 15 -
### Discrimination on the Basis of Race and Color

90.     PLAINTIFF repeats and reiterates the allegations set forth in paragraphs 1 through 89 inclusive of this *Complaint*, with the same force and effect as though herein fully set forth.

91.     NYSHRL, New York Executive Law § 290 declares: " The legislature hereby finds and declares that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A division in the executive department is hereby created to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes."

92.    The above discriminatory pattern and practice based on race and color by DEFENDANTS, their agents, and employees violates New York State law.

93.    DEFENDANTS discriminated against INFANT PLAINTIFF by subjecting INFANT PLAINTIFF to unequal and significantly more severe discipline based on INFANT PLAINTIFF's race as African American, while dispensing little or no discipline to white students who committed greater offenses than INFANT PLAINTIFF.  PLAINTIFFS were also discriminated against by DEFENDANTS who subjected PLAINTIFFS to differential terms and conditions regarding INFANT PLAINTIFF maintaining  enrollment at DEFENDANT HOLY TRINITY, in contract related said enrollment by requiring differential behavioral standards of INFANT PLAINTIFF based on his color and race as black/African American when compared to similarly situated white students.  DEFENDANTS also deprived of INFANT PLAINTIFF of a private Catholic education based on INFANT PLAINTIFF's race and color, black/African American.

94.    The above discriminatory pattern and practice based on race and color by DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE and HOLY TRINITY, through their agents and employees violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No., 102-406).

95.    Upon information and belief DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, HOLY TRINITY, the HOLY TRINITY ADMINISTRATION BOARD, PRINCIPAL KATHLEEN MORAN, ASSISTANT PRINCIPAL PATRICIA COOPER, and ASSISTANT PRINCIPAL JAMES MULLER all participated and made the determination to expel INFANT PLAINTIFF for possession of the marijuana pen as well as another African American/Latino student Minor O.A.

23

96.    Upon information and belief, the only other student expelled from HOLY TRINITY for having a vapor pen on his person was another non white student, Minor O.A. who is African American/Latino.

97.    INFANT PLAINTIFF was asked by Minor O.A. to hold the vapor pen for him. PLAINTIFF had her son submit to a drug tested, and INFANT PLAINTIFF tested negative for marijuana as well as all other narcotics.

98.    Upon information and belief DEFENDANTS THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, HOLY TRINITY, the HOLY TRINITY ADMINISTRATION BOARD, PRINCIPAL KATHLEEN MORAN, ASSISTANT PRINCIPAL PATRICIA COOPER, and ASSISTANT PRINCIPAL JAMES MULLER were on notice that two white students, Minor J.M. and Minor D.R. were involved in selling marijuana pens on school grounds and  actually vaped said pens on school grounds, yet neither of said Minors were expelled.

99.    PLAINTIFF informed DEFENDANTS about a video of Minor J.M. vaping a marijuana pen in a class room at DEFENDANT HOLY TRINITY during class.  Upon information and belief Minor J.M., who is white, was not disciplined, nor was he expelled by DEFENDANTS. Furthermore, DEFENDANTS never requested to view the video of Minor J.M. vaping or asked for a copy of said video and as such, failed to investigate the incident unlike the incident with INFANT PLAINTIFF, were DEFENDANTS acted on information that INFANT PLAINTIFF was in possession of a vapor pen.

100.   Though DEFENDANTS have an appeals procedure for disciplinary decisions, PLAINTIFF was not provided the opportunity to advocate for INFANT PLAINTIFF  prior to DEFENDANTS making the determination to expel INFANT PLAINTIFF. In fact, PLAINTIFF was

informed at a meeting with DEFENDANT COOPER, which PLAINTIFF was lead to believe being held to discuss the incident pending any discipline, that DEFENDANTS had already determined to expel INFANT PLAINTIFF without ANY input from PLAINTIFF or INFANT PLAINTIFF.

101.    To PLAINTIFF's surprise, instead of being given an opportunity to discuss the situation and/or advocate on INFANT PLAINTIFF's behalf prior to the administrative decision, PLAINTIFF JENKINS was merely informed that she could appeal the decision to DEFENDANT MORAN by written letter within forty-eight (48) hours.

102.    Based on information and belief, parents of white students are afforded the opportunity to meet with DEFENDANT MORAN, prior to a determination regarding expulsion or a lengthy suspension of a student at DEFENDANT HOLY TRINITY.

103.    On September 21, 2018, PLAINTIFF JENKINS sent a letter to DEFENDANT MORAN to appeal the Holy Trinity Administrative Board's decision to dismiss INFANT PLAINTIFF. In the letter, PLAINTIFF JENKINS acknowledged INFANT PLAINTIFF's actions, expressed her resmorse and, further told DEFENDANT MORAN that she would take affirmative actions to ensure that their would be no repeat incident involving INFANT PLAINTIFF.

104.    On September 23, 2018, DEFENDANT MORAN replied to PLAINTIFF and stated in part:

> I have read your letter and am very sorry for the pain this incident has caused you and your family. I, however, am charged with the greater responsibility of protecting and creating a safe environment for all the children attending Holy Trinity. **We have very strict consequences for anyone who uses and/or distributed drugs/drug paraphernalia during school or after school.** (*Emphasis Added.*)

> The regulations are clearly outlined in our Parent/Student Handbook. Therefore, I support and will uphold the decision of the Administrative Committee to dismiss[ T].J.

105.     INFANT PLAINTIFF was never alleged to have "used" or "distributed" drug

paraphernalia.

106.     Notwithstanding the DEFENDANT HOLY TRINITY drug policy, DEFENDANTS

have inequitably enforced said policies, by giving white students less server discipline or no

discipline at all, while imposing harsher discipline on Black and Latino students for the same alleged

infractions. Consequently, the same favorable discretion that was afforded to white students was not

extended to INFANT PLAINTIFF or other Black and Latino students with respect to their behavior.

107.     Furthermore, on information and belief, DEFENDANTS were on notice that

members of the HOLY TRINITY football team were selling marijuana pens and vaping on

DEFENDANT HOLY TRINITY school property.  On information and belief said football team

members are white and were not suspended or expelled by DEFENDANTS and were not removed

from the football team.

108.     Prior to being expelled, INFANT PLAINTIFF was suspended for three days by

DEFENDANT Assistant Principal MULLER and DEFENDANT Assistant Principal COOPER after

INFANT PLAINTIFF was found to have a vapor pen on his person.  DEFENDANT COOPER

informed PLAINTIFF that INFANT PLAINTIFF could resume class after his three day suspension.

109.     During the suspension, PLAINTIFF had a scheduled meeting to discuss INFANT

PLAINTIFF with DEFENDANT MORAN.  DEFENDANT MORAN cancelled meetings with

PLAINTIFF on at least two occasions and absolutely refused to meet with PLAINTIFF prior to

making the determination to expel INFANT PLAINTIFF.

110.     Upon information and belief, DEFENDANT MORAN routinely met with parents of

white children who were facing serious disciplinary actions prior to making a determination

regarding discipline, however, based on PLAINTIFF and INFANT PLAINTIFF's race and color, as

black/African American, DEFEDANT MORAN intentionally failed to provide PLAINTIFF the

opportunity to meet and discuss the incident with INFANT PLAINTIFF prior to determining to expel

INFANT PLAINTIFF.

111.    Though DEFENDANT COOPER informed PLAINTIFF that INFANT PLAINTIFF

could return to school after the three day suspension, when INFANT PLAINTIFF did return,

INFANT PLAINTIFF was removed from his last two periods of class and made to stay in the library.

INFANT PLAINTIFF was removed from class by DEFENDANT COOPER in front of all of

INFANT PLAINTIFF's classmates, causing him great embarrassment and humiliation. PLAINTIFF

and INFANT PLAINTIFF are unaware of any instances where a white student was removed from

class for no apparent reason and/or removed from class after returning from suspension.

DEFENDANTS never responded to PLAINTIFF's inquiries as to why her son, INFANT

PLAINTIFF was removed from class in such a manner.

112.    PLAINTIFF was subjected to unequal terms in contract as PLAINTIFF paid tuition

to DEFENDANTS for INFANT PLAINTIFF to attend DEFENDANT HOLY TRINITY. However,

PLAINTIFF was subjected to differential terms, as INFANT PLAINTIFF was held to a higher

standard then the white students, and subjected to unequal discipline, terms and conditions in order

to maintain  his enrollment at HOLY TRINITY.

113.    DEFENDANTS ignored PLAINTIFF and refused to remedy the differential treatment

INFANT PLAINTIFF was subjected to when PLAINTIFF JENKINS complained of the alleged

treatment of her son to DEFENDANTS.

114.    As a result of INFANT PLAINTIFF's wrongful expulsion from DEFENDANT HOLY TRINITY, INFANT PLAINTIFF missed three weeks of school, which caused him to fall behind in his school work.

115.    As a direct and proximate result of said acts, INFANT PLAINTIFF has been deprived of his rights and freedoms, mentally harmed, to the extent of which he suffered from his loss of educational opportunity. INFANT PLAINTIFF has been forced to seek and attend a public institution in lieu of his enrollment at Holy Trinity High School. He has been subjected to humiliation, loss of dignity, emotional distress, humiliation and embarrassment. PLAINTIFF has incurred incidental fees/damages, and attorney's fees.

116.    Because of INFANT PLAINTIFF's race and color, he has been subjected to different and disparate mistreatment as detailed above and has been treated differently than white students in that INFANT PLAINTIFF has been treated as stated herein because of his race and color.

117.    As a result of DEFENDANT's acts, INFANT PLAINTIFF suffered, and is entitled to damages sustained to date and continuing in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## **PRAYER FOR RELIEF**

PLAINTIFF requests judgment as follows:

a.      First Cause of Action: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.      Second Cause of Action: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs, and attorney's fees.

c.      Third Cause of Action: in excess of three million ($3,000,000.00) dollar as well as

punitive;

d.      Attorney's fees and costs, pursuant to 42 U.S.C. §1988 and 42 U.S.C. § 2000e-5(k);

e.      A declaratory judgment stating that DEFENDANTS willfully violated PLAINTIFFS' rights secured by federal and state laws alleged herein;

f.      Injunctive relief: an injunction requiring DEFENDANTS to correct all present and past violations of federal and state law as alleged herein; to enjoin the DEFENDANTS from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

g.      An Order granting such other legal and equitable relief as the court deems just and proper.


**<u>PLAINTIFF DEMANDS A TRIAL BY JURY</u>**

Dated: Hempstead, New York
       March 16, 2020

                                            LAW OFFICES OF
                                            FREDERICK K. BREWINGTON

                                    By:     _____
                                            CATHRYN HARRIS-MARCHESI
                                            *Attorneys for PLAINTIFF*
                                            556 Peninsula Boulevard
                                            Hempstead, New York 11550
                                            (516) 489-6959